JOHN RUSH, APPELLEE, v. D. A. VALENTINE, APPELLANT.

Public Lands: DECISIONS OF LAND OFFICERS. Questions relating to settlement on the public lands under the pre-emption act of 1841, are questions of fact, and the findings of the land officers

33

as to such facts when affirmed on appeal, are conclusive on the parties, and cannot be reviewed in a collateral proceeding.

APPEAL from the district court of Douglas county. Tried below before SAVAGE, J.

*C. A. Baldwin,* for appellant.

*John D. Howe,* for appellee.

MAXWELL, J.

The prayer of the petition in this case is in substance for a decree, declaring that the defendant holds the north east quarter of section 18, in township 15 north, of range 11 east, in Douglas county, in trust for the plaintiff, and require him to convey the same to the plaintiff. A decree was rendered in the court below in favor of the plaintiff. The defendant appeals to this court.

It is alleged in the petition that the plaintiff, "on or about the 3rd day of October, 1869, entered upon and began to improve" the lands above described. It is also alleged, in substance, that he possessed the necessary qualifications to enable him to preempt the same; that on the 19th day of November, 1869, he applied to the receiver of the U. S. land office at West Point—the register being absent at Omaha, but the receiver discharging the duties of said register to file the usual declaratory statement of his intention to enter said lands by pre-emption, and tendered the same to said receiver and register, who declined to receive or file the same, upon the sole ground that said lands were school lands and therefore not subject to entry; that the books, records, and plats of said office showed and described said lands to be school lands, and had so described them for many years before; but, in truth and in fact, said lands were not school lands, but were, on the said 15th day of November, and for some time before had been, subject to entry under the pre-emption laws of the United States; that said register knew said facts and

kept said records without correction with a view to cover up said lands and retain them for his own use and bene-. fit, * * * * * * that on the 3rd day of October, 1869, this plaintiff went upon said lands, supposing them to be school lands, and commenced to build a house there-on for a residence for himself and family, and continued at work upon said house down to about the 15th of November following, when his family moved into said house, which they have ever since continued to occupy; that he commenced said improvements and settlement with a view to buying or leasing said lands, believing them to belong to the school fund under the laws of the state of Nebraska, when they should be offered for sale or leasing; but that on or about said 15th day of November he became aware of the fact that said lands were government lands and subject to private entry under the pre-emption laws of the United States, and moved upon said lands at that time, and then made a settlement thereon with a view of entering and pre-empting the same under said laws of the United States."

It is also alleged that the value of the house erected by the plaintiff was about $500.00, and "that on or about the 17th day of November, 1869, the register of said land office, E. K. Valentine, who is a brother of said defendant, Valentine, conspiring with his brother to defraud this plaintiff, both of them well knowing that the United States had kept, recorded, registered and advertised said lands as school lands, and that said Rush had made valuable improvements upon said lands, and intended to purchase them as aforesaid, left his said office in West Point, some 65 miles distant, with his said brother, and proceeded to said lands with him, and on the evening of said day aided his brother in making a pretended settlement upon said lands, also at that time and before any settlement was actually made upon said lands by said defendant, Valentine, made out upon a blank of said office

which he took with him for that purpose, the statement of his said brother * * * declaring his intention * * * to file and purchase said lands under the pre-emption law * * * which (statement) said register retained in his possession, and after the 19th day of November, 1869,—the exact date being unknown to the plaintiff—caused it to be placed among the records and filings of said land office."

It is also alleged, in substance, that on the 12th day of January, 1870, the plaintiff was allowed to file on said land as of November 19th, 1869, and that the defendant built a small cabin upon said land, and plowed a small portion thereof and lived thereon at times, but not continuously and without his family, until the 15th day of May, 1870, when "in a contest had in said land office between said Rush and said D. A. Valentine before said land officers touching the right to preempt and enter said lands, and upon the allegations and facts in this petition alleged, said register and receiver decided the right to pre-empt and enter said lands to be in said Valentine; and upon appeal by plaintiff from said decision to the commissioner of the general land office at Washington, said decision was affirmed, and upon a further appeal from said last named decision to the secretary of the interior by said Rush, said last named decision was also affirmed, and said filing of said Rush cancelled; but that the defendant has not lived upon said land, and that he entered the same to speculate upon, and, in fact, for the use and benefit of the register of said land office, and that the moneys to pay for said lands were derived from said register.

It is also alleged, in substance, that on the first day of June, 1872, the defendant was allowed to enter said land and thereafter received from the United States a patent therefor, and " that the sole ground of said decision was that the plaintiff had not filed his declaratory statement

in thirty days after the date of his settlement upon said lands with a view to pre-empt the same."

It is also alleged that the plaintiff made the necessary proof to entitle him to pre-empt, and made application to enter said lands, and was then ready and willing to pay the government for the same. There are also charges of fraud and collusion, but as no additional facts are stated it is unnecessary to notice them.

The answer of the defendant states: "that he is a brother of E. K. Valentine, who then was the register of the United States land office for the district in which said land was situated, and that it is true that said land was marked on the books of said office at one time as school lands, but defendant says that said lands were so marked on said books as school lands long before said E. K. Valentine had anything whatever to do with said office and books; that said E. K. Valentine nor this defendant had ought to do with so marking said books, and defendant says he has no knowledge whatever as to the fact how they became so designated, but says that it is not true, and he denies that said E. K. Valentine kept, or permitted said books to remain, in the condition in which he found them when they came to his possession as such register for an improper purpose or object, whatever." The facts upon which the plaintiff predicates his right to recover are all denied, and the defendant says, in substance, that he entered said land in good faith, for his own use, and that he made no contract to convey the same.

In 1859 congress passed an act providing that: " Where settlements, with a view to pre-emption, have been made before the survey of the lands in the field, which are found to have been made on sections sixteen and thirty-six, these sections shall be subject to the pre-emption claim of such settler; and if they, or either of them, shall be reserved or pledged for the use of schools or colleges in the state or territory in which the lands lie,

other lands of like quality are hereby appropriated in lieu of such as may be patented by pre-emptions; and other lands are also hereby appropriated to compensate deficiencies for school purposes," etc.  11 Statutes at Large, 385.

In January, 1860, the legislature of this then territory passed an act providing " that the territorial commissioner of common schools be and is hereby authorized and empowered to select lands in lieu' of sections 16 and 36, or any part of said sections, which may have been sold by the general government.  That all necessary expenses incurred by said territorial commissioner in the selection of said land shall be paid by the territorial treasurer, on the warrant of the auditor."  Laws of 1859–60, page 98.

Whether, the land in controversy had been selected, or an attempt had been made to select the same under the provisions of this act, does not appear in the record. The only testimony upon that point being that of E. K. Valentine, who testifies that he " told his brother that he thought it (the land in controversy) was a very nice piece of land to be lying vacant.  There was other land in Douglas. and some in Sarpy in that same way." He also testifies " it. was in the latter part of June or fore part of July, 1869, I got a letter informing me of the fact" (that the land was subject to pre-emption)  *  *  *  "we didn't open at West Point until the 1st of June of that year.  It was. about a month after that I had my attention called to the indemnity school land, whereupon there was correspondence between myself and the commissioner relative to that matter." He also testifies as to the plat of the land that there was a letter "S" in pencil inside of a circle. " I don't know by whom it was put there.  It was there when I went into the office.  I had special instructions. with regard to that class of land from my predecessor, Mr. Sweezy."

Question. State whether or not you had anything to do whatever with putting on that letter "S"?

A. No, sir.

Whether this land had been withdrawn from market, or if so, when it was restored, does not appear. There being no proof upon these points, the inference is, that the land had not been withdrawn, but had remained open to settlement and entry under the pre-emption laws of the United States.

But it is said that Valentine should have erased the letter "S" upon the plat of the land in dispute, and other lands claimed as indemnity lands, as soon as he became aware that they were open to pre-emption. The answer to this objection is, that there is nothing in the record to show that he was directed to make such erasure, or that it was his duty to make the same. It should appear in some way that he was guilty of neglect, or wilfully concealed the true character of the land for purposes of gain, to defraud the plaintiff to be available in this action. So far as this record discloses, the alleged illegality of the selection of the school land at that time was a matter of mere conjecture, not resting upon any adjudication.

Section 15 of the pre-emption law of 1841 provides that: "When any person settles or improves a tract of land subject at the time of settlement to private entry, and intends to purchase the same under the preceding provisions of this chapter, he shall, within thirty days after the date of such settlement, file with the register of the proper district a written statement, describing the land settled upon and declaring his intention to claim the same under the pre-emption laws," etc.

The abstract of declaratory statements given in evidence by the plaintiff shows the following facts: that the plaintiff filed his declaratory statement January 12, 1870, to take effect as if filed Nov. 19, 1869, in which the date

of his settlement on the land in dispute is stated to be October 3rd, 1869. An abstract of the defendant's declaratory statement is also in evidence, from which it appears that his settlement was made Nov. 17th, 1869, and filed the next day. Whether it was actually filed the next day or not, there is some doubt, but there is no doubt it was filed before the expiration of thirty days, while there was no attempt on the part of the plaintiff to file his declaratory statement before the 19th day of November, 1869.

, The mere fact of *settlement alone* will not give the right of pre-emption. To be available, a declaratory statement must be filed in the local land office within thirty days where the lands have been offered, as it is conceded this land had been. If this declaratory statement is not filed within the proper time, the rights of the party to that tract of land cease, at least under that settlement. And ignorance of the law relating to the case will not aid the applicant. If we place the most favorable construction possible upon the testimony of the plaintiff as to his settlement under the pre-emption law, still the settlement of the defendant is prior in point of time to his, and other things being equal, priority of settlement confers the better right. But questions relating to settlement are purely questions of fact, and the law has created a tribunal for the determination of such questions, whose decisions are final, unless reversed by a direct proceeding or otherwise. The questions here involved have already been decided by the Department of the Interior. The record shows the following adjudication in the case.

DEPARTMENT OF THE INTERIOR, ⎫
GENERAL LAND OFFICE, ⎬
WASHINGTON, D. C., January 9th, 1872. ⎭

. *Register and Receiver, West Point, Nebraska*:

*Gentlemen:* The case of *D. A. Valentine v. John Rush,* pre-emption claimants, to the n. e. one-fourth 18, 15, 11 e., in your district, and trial of which was had in your office

May 25th, 1870, has been duly considered. From the evidence submitted it appears that Mr. John Rush commenced a settlement on said tract October 3rd, 1869. That he commenced the erection of his house on the 6th, completed it November 17th, and moved his family into it on the 19th, and the same day, Nov. 19th, he made application at the land office to file on said tract. Mr. Valentine commenced his settlement Nov. 17th, 1869, made his filing No. 2491, on the 18th and subsequently made satisfactory cultivation and improvements. This land having once been " offered " it was incumbent on Mr. Rush to file his declaratory statement therefor within 30 days next after the date of his settlement, and on his failure so to do it became subject to the entry of any other settler. He not having offered to file his declaratory statement within said legal period, the land was open to Mr. Valentine's entry, or that of any other qualified person. Your decision awarding the right of entry to Valentine is therefore for this reason approved, and you will allow him to make his entry on proof of continued improvement, etc. You will give due notice hereof to all parties in interest, allow 60 days for an appeal, and thereafter promptly inform this officer of the condition of the case, referring to this letter " C " by date.

WILLIS DRUMMOND, *Commissioner*.

We think the testimony fully sustained the finding of the commissioner, as the plaintiff's testimony is not satisfactory as to the date of his settlement. But in any event, this decision upon these questions is conclusive and cannot be reviewed in this collateral proceeding. *Smiley v. Sampson*, 1 Neb., 56. The petition fails to state facts sufficient to entitle the plaintiff to relief, upon the ground of fraud. And the proof fails to show that E. K. Valentine has any interest in this land whatever — the testimony being that he has not. The only inference of fraud consists in the fact that the defendant is his brother, and

that he aided him in procuring the money to enter the land, and has paid a portion of the interest on the same. But this is not sufficient to entitle the plaintiff to recover, where the testimony is positive and direct that E. K. Valentine has no interest in the premises.

The judgment of the district court is reversed, and the cause dismissed.

JUDGMENT ACCORDINGLY.